UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

RANDY ANGER,

        Plaintiff,                                    Case No. 13-12143
                                                    Honorable Thomas L. Ludington

v.

JOSEPH CHUNG, BUREAU OF
HEALTH CARE SERVICES,
ANIL S. PRASAD,

        Defendants.
_____/

**OPINION AND ORDER OVERRULING OBJECTIONS, ADOPTING REPORT AND RECOMMENDATIONS, GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, AND DENYING PLAINTIFF'S MOTION FOR COMPLIANCE**

Randy Anger, an inmate currently confined by the Michigan Department of Corrections (MDOC), filed a pro se civil rights complaint pursuant to 42 U.S.C. § 1983. He alleges that Joseph Chung, MD, Anil S. Prasad, MD, and the Bureau of Health Care Services (BHCS) were deliberately indifferent to his serious medical needs.

On July 18, 2013, Dr. Chung and BHCS filed a joint motion for summary judgment.[1] The motion was referred to United States Magistrate Judge Laurie J. Michelson pursuant to 28 U.S.C. § 636(b)(1). On January 8, 2014, Judge Michelson filed a report recommending that Dr. Chung and BHCS's motion for summary judgment be granted. Judge Michelson concluded that BHCS "as part of a sovereign, is immune from suit," and that "Anger has produced insufficient evidence that Dr. Chung was deliberately indifferent to his serious medical needs." Report & Rec. 2, ECF No. 31.

---

[1] Dr. Prasad did not join in the motion and is represented by alternate counsel. *See* Defs.' Mot. 3 ("This motion is on behalf of Defendants Chung and BHCS.").

Anger filed objections to Judge Michelson's report on January 27, 2014. He argues that BHCS "does not fall under [MDOC's] umbrella of sovereign immunity as they are mutually exclusive of each other . . . ." Pl.'s Obj. 3, ECF No. 34. Anger argues that Dr. Chung "is directly responsible for Mr. Anger's medical condition due to his complete deliberate indifference and disregard of the consequences of his actions as the Plaintiff, Mr. Anger has a serious medical condition, a close head injury." *Id*. at 5.

Upon review, Judge Michelson's report withstands Anger's objections; the objections will be overruled, the report will be adopted, and Dr. Chung and BHCS's motion for summary judgment will be granted. Further, as explained below, Anger's motion for compliance will be denied as moot.

I

Anger alleges that on October 25, 2008—before he was incarcerated—he was attacked in Detroit, Michigan and suffered "traumatic brain injuries." Pl.'s Compl. ¶ 5, ECF No. 1. Following these injuries, and after being confined by the MDOC, Anger was prescribed "a class of psychotropic (neuroleptic) medication to control his bi-polar episodes, seizures and hallucinations." *Id*. ¶ 23. Dr. Chung managed Anger's medications for a period of approximately ten months. Anger claims that Dr. Chung's medication changes, without knowledge of Anger's medical history and without informing Anger of potential side effects, caused him to develop Tardive Dyskinesia, an involuntary-movement disorder that can result from taking psychotropic drugs. *See* Pl.'s Resp. Chung Aff. 6, 43, ECF No. 21. Anger also alleges that Dr. Chung failed to diagnose his Tardive Dyskinesia disorder, instead concluding incorrectly that Anger was engaging in "drug-seeking" behavior and was "faking" symptoms of the disorder. *Id*. at 43. Further, Anger argues that Dr. Chung, by simply telling him to stop

taking his psychotropic medications, provided inadequate treatment for his Tardive Dyskinesia. *Id*.

Based on these claims, Anger filed a complaint against Dr. Chung, BHCS, and Dr. Prasad.[2] Dr. Chung and BCHS's motion for summary judgment followed, and as described above, Judge Michelson issued a report recommending the motion be granted on January 8, 2014.

## II

Summary judgment is proper when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The focus must be "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby*, 477 U.S. 242, 251–52 (1986). All justifiable inferences from the evidence must be drawn in the non-moving party's favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "Entry of summary judgment is appropriate 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.' " *Walton v. Ford Motor Co.*, 424 F.3d 481, 485 (6th Cir. 2005) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

The filing of an objection to a magistrate judge's report and recommendation requires the district court to "determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). The district judge may then "accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." *Id*. The failure to file objections to a report and recommendation, however, "constitutes a waiver of any further right of appeal," *Varner v.*

---

[2] The claims against Dr. Prasad are not relevant to this Opinion and will not be set out in detail.

- 3 -

*Wolfenbarger*, No. 08-11162, 2010 WL 3290959, at *1 (E.D. Mich. Aug. 19, 2010), and relieves the district court from its duty to independently review the record, *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *see also Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991) ("A district judge should not have to guess what arguments an objecting party depends on when reviewing a magistrate's report.").

### III

### A

Before reaching Judge Michelson's report and Anger's related objections, another issue warrants attention. The same day BHCS and Dr. Chung filed their motion for summary judgment, they also filed a motion for a protective order concerning one of the exhibits supporting the motion for summary judgment (Exhibit 2), as well as—under seal—Exhibit 2 itself. Exhibit 2 consists of excerpts from Anger's medical records. Anger then filed a motion to compel, requesting a number of documents—including "[a]ll medical documents." Mot. Compel 2, ECF No. 19.

As all pretrial matters in this case were referred to Judge Michelson pursuant to § 636, she addressed both the motion for the protective order as well as Anger's motion to compel. Judge Michelson denied the motions, indicating that both "Plaintiff's Complaint and Defendants' Motion for Summary Judgment have already (publicly) disclosed significant amounts of Plaintiff's medical information[,]" and that "a motion to compel initial disclosures" was not available to Anger—a pro se prisoner alleging a civil rights violation. *See* Nov. 4, 2013 Order 3, 4, ECF No. 23.

Judge Michelson established that while she was "concerned by Plaintiff's representations that he has not received his medical records despite repeated requests and the provision of an

authorization," she "trust[ed] Defendant Bureau of Health Care Services [would] rectify th[e] situation pursuant to Policy Directive 03.04.108(S) . . . ." *Id.* at 4.

On January 8, 2014, Judge Michelson issued her report and recommendations. She relied on Anger's medical records (Exhibit 2), and noted that she had previously ordered the "Defendants to provide Anger with those records." Report & Rec. 13. Judge Michelson also established that two months had passed since the November 4, 2013 Order, that "Anger ha[d] filed no supplemental brief based on those records or otherwise contested their contents[,]" and again made clear that she "trust[ed] that Defendants ha[d] complied" with her direction that Anger be provided Exhibit 2.

On January 27, 2014, Anger filed a motion for compliance with the Court's order, representing that "[t]he Defendant's [sic] have not complied too [sic] the Court's order and did not provide a copy of Exhibit 2 to the Plaintiff." Mot. Compliance 2, ECF No. 33. So the Court directed that BHCS file proof of service demonstrating that Exhibit 2 had been served upon Anger, or expedite service by February 14, 2014. *See* Feb. 12, 2014 Order, ECF No. 35.

Two days later, on February 14, BHCS filed notice of compliance with the Court's order. *See* Notice Compliance, ECF No. 36. BHCS noted that proof of service had already been filed along with its motion for summary judgment on July 18, 2013. Indeed, the certificate of service corresponding with the motion indicates that "Exhibit 2, FILED UNDER SEAL . . . [was] mailed by U.S. Postal Service" to Anger. *See* Def.'s Mot. 16, ECF No. 12. And although BHCS was "unclear" why Anger "did not receive Exhibit 2[,]" in an "abundance of caution" it "resubmit[ed] Exhibit 2 (medical records) to [Anger] via mail." Notice Compliance 1–2.

Because BHCS has demonstrated that it mailed Exhibit 2 to Anger in July 2013, and then again in February 2014, Anger's motion for compliance will be denied as moot.

**B**

In her report, Judge Michelson concluded that BHCS should be dismissed because it is a part of MDOC, and MDOC "is an arm of the State of Michigan for sovereign immunity purposes." Report & Rec. 10 (citing *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013)). Anger's objections focus more on Dr. Chung, but he does assert that "[t]he Bureau of Health Care Services is located within the Department of Licensing and Regulatory Affairs (LARA) and does not fall under umbrella immunity of the Michigan Department of Corrections." Pl.'s Obj. 4. Upon review, Anger is mistaken; BHCS is a branch of MDOC and is entitled to sovereign immunity on that basis.

Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1993). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court, *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). Moreover, in numerous unpublished opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from suit under the Eleventh Amendment. *See*, *e.g.*, *McCoy v. Michigan*, 369 F. App'x 646, 653 (6th Cir. Mar. 12, 2010) (because "the MDOC is 'an arm of the State of Michigan,' the MDOC is entitled to sovereign immunity on the § 1983 claim"); *Turnboe v. Stegall*, 234 F.3d 1270, 2000 WL 1679478, at *2 (6th Cir. Nov. 1, 2000) ("the MDOC, as an arm of the State of Michigan, is entitled to sovereign immunity.").

And contrary to Anger's assertion, BHCS is a part of the MDOC and likewise entitled to Eleventh Amendment immunity. *See*, *e.g.*, *Longwish v. Michigan Dep't of Corr. Bureau of Health Care Servs.*, No. 12-53, 2012 WL 443023, at *1 (W.D. Mich. Feb. 10, 2012) ("the Court will dismiss Plaintiff's complaint against Defendant MDOC Bureau of Health Care Services because it is immune from suit."); *Sain v. Caruso*, No. 11-63, 2011 WL 1458403, at *1 (W.D. Mich. Apr. 15, 2011) ("The Court also will dismiss Defendant Bureau of Health Care Services because it is immune."); *Hardy v. Wohlfert*, No. 10-1087, 2010 WL 5146590, at *1, *2 (W.D. Mich. Dec. 13, 2010) (holding that BHCS "is a division of the MDOC" and therefore "immune from suit."); *Hagopian v. Smith*, No. 05-74025, 2007 WL 3038024, at *1 (E.D. Mich. Oct. 18, 2007) ("As a part of the Michigan Department of Corrections, the Bureau of Health Care Services is protected by such immunity."). Anger's conclusory statements that BHCS "does not fall under umbrella immunity of the [MDOC]" do not overcome the compelling authority establishing that BHCS—as a part of the MDOC—is an arm of the State of Michigan and therefore immune from suit under the Eleventh Amendment. Anger's objections on this point will be overruled, Judge Michelson's report will be adopted, and BHCS will be dismissed.

**C**

As to Dr. Chung, Anger indicates that the doctor "intentionally" ignored the existence of his "closed head injury promulgating Tardive Dyskinesia" and "ordered the discontinuance . . . of Seroquel to the Plaintiff," which Anger claims constitutes "complete deliberate indifference and disregard of the consequences of [Dr. Chung's] actions . . . ." Pl.'s Obj. 10. Anger summarizes his claims against Dr. Chung, asserting the doctor "abruptly stopped all administration of Seroquel to the Plaintiff. The abrupt withdrawal of Seroquel from the Plaintiffs standard care of medication started the onslaught of the symptoms of Tardive

Dyskinesia." *Id*. at 12. So it seems that Anger believes Dr. Chung was deliberately indifferent to his closed-head injury and discontinued the administration of Seroquel, which then heightened his suffering from Tardive Dyskinesia.

However, the evidence shows that Dr. Chung's decision to discontinue Seroquel could not have been deliberate indifference—but instead was the very treatment that was called for. In an article entitled "Psychotropic Drugs: What Are They?", author Enjoli Francis explains that "[t]he phrase 'psychotropic drugs' is a technical term for psychiatric medicines that alter chemical levels in the brain which impact mood and behavior." Enjoli Francis, *Psychotropic Drugs: What Are They?*, ABC News, Dec. 2, 2011, http://abcnews.go.com/blogs/health/2011/12/02/what-you-need-to-know-about-psychotropic-drugs/. In the article, Francis lists Seroquel as a commonly prescribed antipsychotic, which makes it a psychotropic drug. Likewise, the United States Food and Drug Administration (FDA) published a medication guide concerning Seroquel in October 2013, describing it as an antidepressant used to treat schizophrenia and bipolar disorder. (Guide available at http://www.fda.gov/downloads/Drugs/DrugSafety/ucm089126.pdf.)

And review of Anger's medical records reveals numerous health care professionals advising that the best way to treat Tardive Dyskinesia is to stop the application of psychotropic drugs like Seroquel. While treating Anger on April 17, 2012, Dr. Vasilis K. Pozios, MD, told Anger that "it would not make sense to prescribe a psychotropic medciation [sic] because of the possibility that it may exacerbate his current symptoms." Bryan D. Buller, MD, treated Anger in March 2012 and indicated his belief that Anger suffers from "facial dyskinesia" that Dr. Buller described as "of the Tardive variety." However, Dr. Buller explained "[t]here is no proven therapy for this other than stopping [Anger's] psychotropic medications, which has been done."

Indeed, even Anger himself concedes that the proper treatment for Tardive Dyskinesia is discontinuing psychotropic medications: "In March 2012, Dr. Buller believed that Anger likely had Tardive Dyskinesia, but provided, there is no proven therapy for this other than stopping his psychotropic medications, which has been done. [Anger] *never disputed this fact* . . . ." Pl.'s Obj. 23 (emphasis added). And stopping Anger's psychotropic medications is just what Dr. Chung did; after evaluating Anger on June 9, 2011, Dr. Chung ordered that "no psychotropic medication" be administered.

Thus, the medical evidence in the case demonstrates that treating Tardive Dyskinesia involves cessation of psychotropic medications such as Seroquel, as it is among the very things that can cause Tardive Dyskinesia or make it worse. Yet Anger claims that Dr. Chung was deliberately indifferent to his medical needs and *caused* his Tardive Dyskinesia because he ordered the administration of Seroquel to be suspended. The argument is simply not borne out by the evidence, Anger's objection will be overruled, and Judge Michelson's conclusion—that Anger did not demonstrate Dr. Chung was indifferent to his serious medical needs—will be adopted.

### IV

Accordingly, it is **ORDERED** that Anger's objections to Judge Michelson's report and recommendations, ECF No. 34, are **OVERRULED**.

It is further **ORDERED** that Judge Michelson's report and recommendations, ECF No. 31, are **ADOPTED**.

It is further **ORDERED** that Dr. Chung and BHCS's motion for summary judgment, ECF No. 12, is **GRANTED**.

It is further **ORDERED** that Anger's claims against Dr. Chung and BHCS are **DISMISSED** with prejudice.

It is further **ORDERED** that Anger's motion for compliance, ECF No. 33, is **DENIED** as moot.

Dated: March 5, 2014                                               s/Thomas L. Ludington
                                                                                    THOMAS L. LUDINGTON
                                                                                    United States District Judge

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail, and upon Randy Anger #774678, Gus Harrison Correctional Facility, 2727 E. Beecher St., Adrian, Michigan 49221 by first class U.S. mail, on March 5, 2014.

s/Tracy A. Jacobs
TRACY A. JACOBS